993 P.2d 1074

**Allen K. RADKOWSKY, M.D., an individual, Plaintiff–Appellant, Cross–Appellee,**

v.

**PROVIDENT LIFE & ACCIDENT IN-SURANCE COMPANY, a Tennessee corporation; Provident Mutual Life Insurance Company of Philadelphia, a Pennsylvania corporation, Defendants–Appellees, Cross–Appellants.**

No. 1 CA–CV 98–0480.

Court of Appeals of Arizona, Division 1, Department C.

May 18, 1999.

Redesignated as Opinion and Publication Ordered June 21, 1999.

As Amended June 29, 1999.

Frederick C. Berry, Jr., P.C. by Frederick C. Berry, Jr. and Brendan N. Mahoney, Phoenix, Attorneys for Plaintiff–Appellant, Cross–Appellee.

Lewis and Roca LLP by Susan M. Freeman, Stephen M. Bressler and Ann–Martha Andrews, Phoenix, Attorneys for Defendants–Appellees, Cross–Appellants.

## OPINION

EHRLICH, Judge.

¶ 1 Allen K. Radkowsky, M.D., maintains that he is disabled according to the terms of five disability and business overhead policies purchased from contract predecessors of two insurance companies, Provident Life & Accident Insurance Company and Provident Mutual Life Insurance Company of Philadelphia (collectively, "Provident"). After his claims were denied by Provident, he sued it for breach of contract and bad faith, requesting compensatory and punitive damages. After considering cross-motions for summary judgment, the trial court granted judgment for Provident on the contract claim but denied it attorneys' fees, denied judgment to Dr. Radkowsky and found the issue of bad faith to be moot.

¶ 2 Dr. Radkowsky appeals from the judgment. Provident cross-appeals from the denial of its request for attorneys' fees. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 The material facts are not in dispute. Dr. Radkowsky was born with several serious eye maladies, which always have posed problems and limited activities for him. Regardless, he chose to enter medical school, and, although he realized that his performance might be circumscribed, he believed that he could successfully practice internal medicine.

¶ 4 While in medical school, Dr. Radkowsky purchased two disability income insurance policies from Provident. He purchased the other three policies after he began private practice.

¶ 5 Following medical school, Dr. Radkowsky served as a contract physician in various locations. He then accepted a contract with Thunderbird Samaritan Hospital before establishing his solo practice in June 1993. From the beginning of his medical career, due to his eye condition, Dr. Radkowsky has been unable to perform certain procedures routinely done by other internists, and he has required more time per patient to maintain the necessary records. Because of his limitations, he characterized his practice as "strict internal medicine."

¶ 6 Eventually Dr. Radkowsky applied for benefits under the five Provident policies. He filed his first claim on January 10, 1996. He then closed his office when his lease expired twelve months later. Although his eye condition had not worsened, he had decided that he could not generate sufficient income without working significantly longer hours than other internists to achieve the same financial rewards.

## II. DISCUSSION

■ ¶ 7 The trial court found that Dr. Radkowsky,

> when he began his practice, purposely limited the areas in which he practiced. Although he was slow in performing the paperwork required, there are no facts upon which a jury could find that he could not perform his duties in the same manner at the beginning of his time in practice and at the conclusion. Dr. Radkowsky was not disabled under the terms of the policies.

However, the interpretation of an insurance contract is a question of law reviewed by us de novo. *Thomas v. Liberty Mutual Ins. Co.*, 173 Ariz. 322, 324, 842 P.2d 1335, 1337 (App.1993). Our independent obligation is to determine from the language of the policies whether Dr. Radkowsky is entitled to recover.

¶ 8 All five policies require that the insured be unable to perform the substantial and material duties of his "Regular Occupation" or "your occupation." "Occupation" is defined by two of the policies as "your occupation at the time Total Disability begins" and by three policies as "the occupation ... in which you are regularly engaged at the time you become disabled." It is clear from these definitions that each policy provides benefits for an insured whose "[d]isability begins" or who "becomes disabled" while he was engaged in the occupation he is claiming he can no longer perform. Coverage thus exists for the insured who once was performing the substantial and material duties of his occupation but who became unable to continue due to disability, not for one who has come to realize that a condition he always has had prevents him from performing effectively or profitably in his chosen occupation.

■ ¶ 9 Dr. Radkowsky did not "become disabled" while an internist. Although his vision worsened slightly over the years, no evidence was offered that Dr. Radkowsky's ability to perform his duties diminished as a result. Rather, the testimony was consistent that Dr. Radkowsky was never efficient in the practice of internal medicine.

¶ 10 Dr. Radkowsky relies upon *Nystrom v. Massachusetts Cas. Ins. Co.*, 148 Ariz. 208, 213, 713 P.2d 1266, 1271 (App.1986), to support his position, but that reliance is misplaced. To the contrary, in *Nystrom* we concluded that, to recover from an occupational disability policy, the disability need "be such as to render (the insured) unable to perform the substantial and material acts of his own occupation in the usual or customary way." *Id.*, quoting *Massachusetts Cas. Ins. Co. v. Rief*, 227 Md. 324, 176 A.2d 777, 779 (1962). Using this standard, Dr. Radkowsky still is able to perform his occupation in his "usual or customary way." He is not entitled to disability payments because he cannot now perform duties he never could perform and therefore cannot achieve financial success. There was no showing that he could not continue in the same manner as always. Indeed, the facts that Dr. Radkowsky had a contract practice, exchanged it for a solo practice and then continued in that practice for almost one year after he filed his first claim with Provident support the conclusion that he did not become disabled because "the plain language of the term disabled means unable to engage in his regular occupation." *Allmerica Financial Life Ins. & Annuity Co. v. Llewellyn*, 943 F.Supp. 1258, 1262 n. 6 (D.Or.1996), *aff'd*, 139 F.3d 664, 666 (9th Cir.1997). Dr. Radkowsky was no more disabled from his practice of internal medicine than he had been.[1]

---

1. The courts consistently have focused upon the unique and specific tasks of the insured's occupation to determine whether he no longer can engage in his profession in the usual or customary way. Accordingly, a disability exists when a practicing physician can no longer perform the specific tasks of his practice, regardless of the duties of a more general practice. *See Dixon v. Pacific Mutual Life Ins. Co.*, 268 F.2d 812 (2d Cir.1959), *cert. denied*, 361 U.S. 948, 80 S.Ct. 403, 4 L.Ed.2d 381 (1960) (A surgeon who could no longer perform surgery was awarded benefits although he could still serve as a physician.);

*Brumer v. National Life of Vermont*, 874 F.Supp. 60 (E.D.N.Y.1995), *aff'd*, 133 F.3d 906 (2d Cir. 1998) (A podiatrist who managed clinics developed a deleterious eye condition while his medical license was suspended. Disability was denied, though, because his occupation had not included performing podiatric services.); *Oglesby v. The Penn Mutual Life Ins. Co.*, 877 F.Supp. 872 (D.Del.1994) (A radiologist practicing a sub-specialty was awarded disability when he could no longer practice his specialty although he could return to general radiology.); *Rahman v. Paul*

¶ 11 Dr. Radkowsky then argues that, because he disclosed his eye condition to Provident when the policies were issued, Provident should be foreclosed from objecting now because of the preexisting condition and the incontestability clauses in the policies. We disagree.

¶ 12 The clauses provide that, except when a preexisting condition has been expressly excluded, a disability beginning after two years from the effective date of the policy will not be denied even if arising out of a preexisting condition. Nothing in these clauses, however, changes the requirement that the disability must begin after the policyholder has been engaged in his occupation, although the condition that eventually gives rise to the disability may be in existence earlier.

¶ 13 To support his theory, Dr. Radkowsky cites *Robinson v. Brotherhood of Railroad Trainmen Ins. Dept.,* 73 Ariz. 352, 241 P.2d 791 (1952), *mod. on other grounds,* 74 Ariz. 44, 243 P.2d 472 (1953). In that case, the policyholder had a preexisting condition, but the condition did not cause his disability until 2–2–1/2 years later. The incontestability clause of the policy provided that "[t]his policy shall be incontestable after one year from its date as to the *time* of the happening of bodily injury or sickness causing disability commencing after such year and while this policy is in force." *Id.* at 355, 241 P.2d at 793. The court interpreted the clause as providing that, when the "disability commenced more than a year after the issuance of the policy, the *time* of the original sickness which ultimately caused the disability cannot be made the ground of contest by the insurer." *Id.*

¶ 14 In contrast, Dr. Radkowsky's preexisting condition is no more "disabling" now than it was when the policies were issued. There is no question of a preexisting condition that more than two years later precipitated a disability. In this case, the "disability" is the discovery that the preexisting condition makes it impractical for Dr. Rad-

kowsky to engage in the solo practice of internal medicine, and such is not covered.

¶ 15 Next Dr. Radkowsky argues that there is a factual issue as to whether he had reasonable expectations that the policies would encompass this situation, relying on *Darner Motor Sales v. Universal Underwriters,* 140 Ariz. 383, 682 P.2d 388 (1984), for the proposition that a contracting party's reasonable expectation may affect the enforceability of non-negotiated terms in a standardized agreement. We disagree, though, that a factual issue concerning any such expectation exists in this case.

¶ 16 The policies unambiguously provide in language that readily can be understood by the reader that they cover a disability only if it is one beginning after a policyholder is engaged in his occupation. And Dr. Radkowsky offered no evidence of circumstances outside the policy, such as conversations with an insurance agent, permitting him to argue that, apart from the policy, he had expectations that he would be covered under the circumstances presented.

¶ 17 Dr. Radkowsky's remaining argument regarding Provident's bad faith is moot because of our disposition of the contract claim.

¶ 18 In its cross-appeal, Provident challenges the trial court's denial of its request for attorneys' fees in the amount of $64,281.50. The court considered the factors enumerated in *Associated Indemnity Corp. v. Warner,* 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985), and decided to deny Provident its fees. We review that decision according to the standard of whether the trial court abused its discretion. *Id.* at 571, 694 P.2d at 1185. We will not substitute our judgment for that of the trial court if there is any reasonable basis to uphold its decision, *Grand Real Estate, Inc. v. Sirignano,* 139 Ariz. 8, 14, 676 P.2d 642, 648 (App.1983), and we cannot conclude in this case that the trial court had no reasonable basis for denying fees.

¶ 19 Provident also has requested an award of its costs and attorneys' fees on

*Revere Life Ins. Co., Inc.,* 684 F.Supp. 192 (N.D.Ill.1988) (Because a physician could no longer run to emergency-room patients, he could

not perform as usual and therefore was entitled to benefits.). These cases are unlike that of Dr. Radkowsky whose performance is unchanged.

appeal. We grant that request upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

¶ 20 The judgment is affirmed with costs and attorneys' fees on appeal awarded to Provident.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and REBECCA WHITE BERCH, Judge.