PHOENIX HOME LIFE MUTUAL INSURANCE COMPANY, a New York corporation, Plaintiff–Appellant,

v.

Barbara E. HUGGETT and John K. Huggett, her husband, Defendants–Appellees.

No. 99–16612.

D.C. No. CV 97–0735–PHX–EHC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2001.

Decided March 16, 2001.

As Amended on Denial of Rehearing May 10, 2001.

Before SCHROEDER, Chief Judge, WALLACE and TALLMAN, Circuit Judges.

## MEMORANDUM [1]

Phoenix Home Life Mutual Insurance Company (Phoenix) appeals from a judgment entered against it after a two-day bench trial. The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a). We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

Phoenix first contends that the district court erred in determining that Huggett is "totally disabled" under the terms of her disability insurance policy and, therefore, is entitled to receive disability benefits. Phoenix argues that Huggett merely shifted duties, continuing to work as a professional nurse for the same employer, in the same location, at the same salary. Thus, she merely changed "jobs" within her "occupation," and is not "totally disabled" and entitled to collect on her policy. The district court determined that because Huggett is "unable to perform the substantial and material duties of her regular occupa-

---

tion of surgical nurse due to severe stress," she is "totally disabled" and entitled to receive benefits under the policy.

In order to receive benefits under the Phoenix disability policy, Huggett had to establish that she was "totally disabled." The policy sets up two "tiers" of coverage. First, the policy provides a type of coverage commonly termed "occupational disability" insurance. This coverage is available under the policy for up to sixty months or until Huggett reaches the age of fifty-five, whichever occurs later, and is triggered if Huggett is "totally disabled" such that her disability "prevents [her] from engaging in . . . [her] regular occupation . . . at the time the disability began ." Second, following the sixty-month period, or after Huggett reaches age fifty-five, the policy provides for "general disability" insurance, which is available to Huggett only if her disability "prevents [her] from engaging in . . . any occupation for which [she] is or becomes reasonably suited by education, training, or experience."

■ Thus, the threshold issue in this case is whether Huggett's occupational disability coverage was triggered by a "total disability," which, under the policy, requires a determination of Huggett's "regular occupation" at the onset of her disability. Under Arizona law, when examining a claim under an occupational disability policy, "[t]he proper standard for disability . . . is whether the condition . . . prevents the insured from performing the substantial and material duties of his occupation in the usual or customary way." *Nystrom v. Mass. Cas. Ins. Co.,* 148 Ariz. 208, 713 P.2d 1266, 1270 (Ariz.Ct.App.1986). This standard is known as the "substantial performance" test. *See Couch on Insurance 3d* § 147:107 (1998). In applying this standard, "[t]he courts consistently have focused upon the unique and specific tasks of the insured's occupation to determine

whether he no longer can engage in his profession in the usual or customary way." *Radkowsky v. Provident Life and Accident Ins. Co.,* 196 Ariz. 110, 993 P.2d 1074, 1076 n. 1 (Ariz.Ct.App.1999). Thus, "under the 'substantial performance' test, even though the insured is able to perform some parts of his or her work, a case of total disability is presented where the insured is incapacitated from performing any substantial part of his or her ordinary duties." *Couch* at § 147:107.

In this case, the district court found:

In 1994, Huggett was working predominantly as a surgical nurse, performing surgical nursing duties. She spent about 98% of her workday in the operating room and her duties were almost exclusively surgical in nature.

. . . .

. . . Huggett's present duties . . . are administrative tasks which are not ordinarily performed by a nurse. For the most part, Huggett's current duties do not require any specialized training as a nurse . . . This is work that would ordinarily be delegated to an executive or administrative assistant.

Accordingly, the district court determined that Huggett is no longer able to perform the "substantial and material" duties of her occupation and, therefore, is "totally disabled" under the terms of her policy.

■ We review the district court's factual findings for clear error. *Cariaga v. Local No. 1184, Laborers Int'l Union of N.Am.,* 154 F.3d 1072, 1074 (9th Cir.1998). Huggett's pre- and post-injury job descriptions, together with letters sent to Phoenix by Huggett's employer and the insurance agent who sold Huggett her original policy in 1982, provide evidentiary support for the district court's findings. Based upon this evidence, Huggett's substantial and material duties prior to her disability were

surgical, while after her disability she was unable to perform those duties in the usual or customary way. In fact, the district court found that she was not able to perform them at all as she was reduced to performing largely administrative tasks. Because we are not left with a definite and firm conviction that the district court committed a mistake, we affirm its determination that Huggett is "totally disabled" and entitled to receive benefits under her disability insurance policy. *See United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir.1998) (en banc) ("We accept the lower court's findings of fact unless upon review we are left with the definite and firm conviction that a mistake has been committed.").

Phoenix next contends that the district court erred in awarding Huggett monthly income benefits for *life*. Phoenix argues that the district court failed to recognize that the policy at issue is a "two-tier" disability policy. By misconstruing the policy's Schedule of Benefits, Phoenix argues, the district court erroneously read the "general disability" provision out of Huggett's policy.

The interpretation and meaning of contract provisions are questions of law reviewed de novo. *Mendler v. Winterland Prod., Ltd.*, 207 F.3d 1119, 1121 (9th Cir. 2000). The plain meaning of the policy language is clear. When an insured is disabled from engaging in the insured's regular occupation at the time the disability began, the first type of coverage provides compensation for five years, or until the insured reaches the age of 55, whichever occurs later. At the expiration of that time period, this "occupational disability" coverage expires. "The expectation is that, by that time, the insured will have made the necessary adjustment to another line of work or, if that is not possible because of the severity of the disability, will qualify for continued benefits under

the second type of coverage ...." *McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 587 (7th Cir.1998).

Without any analysis of the two-tier policies, the district court simply stated that there are two types of disability insurance policies and that Huggett's policy is an "occupational insurance" policy rather than a "general insurance policy." The district court's determination can be traced to its interpretation of the Schedule of Benefits (Schedule) contained in Huggett's policy, and its impact on the policy as a whole.

■ The Schedule provides that if the insured is totally disabled prior to the age of fifty, her "maximum benefit period" is "lifetime." The district court interpreted this to mean that because Huggett was totally disabled prior to the age of fifty she is entitled to receive monthly disability benefits for life with no ongoing requirement that she be disabled. However, when read in conjunction with the rest of the policy, the Schedule only states the maximum period for which benefits *may* be payable. *See Nat'l Bank of Ariz. v. St. Paul Fire & Marine Ins. Co.*, 193 Ariz. 581, 975 P.2d 711, 713 (Ariz.Ct.App.1999) ("[T]he policy must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions.") (internal quotations omitted; alteration in original). Under the "Benefits" section of the policy, which governs when benefits are payable under the policy, the "monthly income" provision provides that Phoenix "will pay the Monthly Income shown on page 1 [the Schedule] for *each month the Insured is totally disabled* after the Waiting Period. Payments will not be made for more than the Maximum Benefit Period." (Emphasis added). Thus, in order to receive monthly benefits under the policy, the insured must continue to be disabled as defined under the policy. As pointed out earlier, that definition shifts after five

years, or when the insured reaches the age of fifty-five, whichever occurs later. In order to continue to receive benefits, Huggett's disability must prevent her from engaging in "any occupation for which [she] is or becomes reasonably suited by education, training, or experience." As Huggett continues to work for the same employer, she does not qualify to receive benefits under the "general disability" tier of the policy.

The district court's interpretation effectively overrides the "monthly income" and "general disability" provisions, and awards Huggett benefits for life, regardless of continued disability. Huggett contends that this is the result the parties intended. She argues that she purchased a benefits "extension" to provide for lifetime monthly benefits if the onset of total disability occurred prior to her fiftieth birthday. However, there is no evidence in the record supporting this contention. Therefore, to the extent the district court ordered payments for life, it was error to do so. Read as a whole, the policy requires Phoenix to pay Huggett monthly benefits for life only if she remains disabled under the terms of her two-tier policy.

Finally, Phoenix contends that the district court erred in determining that it acted in bad faith in denying Huggett's claim. We review the district court's bad faith determination under the clearly erroneous standard. *See Hanson ex rel. Hanson v. Prudential Ins. Co. of Am.*, 783 F.2d 762, 766 n. 1 (9th Cir.1985).

■ Under Arizona law, "[t]he tort of bad faith arises when the insurer intentionally denies, fails to process or pay a claim without a reasonable basis." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276, 279 (Ariz.2000) (en banc) (internal quotation omitted). "While an insurer may challenge claims which are fairly debatable its belief in fair debatabili-

ty is a question of fact to be determined by the jury." *Id.* (internal quotation omitted). "An insurance contract is not an ordinary commercial bargain; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." *Id.* (internal quotation omitted). "[I]f an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith without regard to its ultimate merits." *Id.* at 280 (internal quotation omitted).

Here, the district court determined that, given the facts and circumstances known to Phoenix at the time, its *initial* denial of Huggett's claim was not in bad faith. However, the district court determined that subsequent to the initial denial, Phoenix received additional information—letters from Huggett, her employer, and the agent who sold her the original policy—that "should have made it apparent to Phoenix that its initial determination was in error." Accordingly, the district court concluded that Phoenix's continued refusal to pay benefits under the disability policy was unreasonable, self-serving, and, ultimately, in bad faith.

The district court did not adequately address why Phoenix's continued denial was unreasonable, however, especially in light of the district court's own acknowledgement that " '[t]here is a considerable dearth of judicial authority on the meaning of the term 'regular occupation' in occupational disability policies.' " *Quoting Blasbalg v. Mass. Cas. Ins. Co.*, 962 F.Supp. 362, 367 (E.D.N.Y.1997). Because Huggett continued to work full-time for the same employer at the same salary, Phoenix's basis for denying her claim—that Huggett merely changed "jobs" within her "occupation"—is not unreasonable where there is sparse judicial guidance on the matter.

■ While "an insurer may be held liable in a first-party case when it seeks to

gain unfair financial advantage of its insured through conduct that invades the insured's right to honest and fair treatment," *Zilisch,* 995 P.2d at 280 (internal quotation omitted), the district court did not make findings that Phoenix "force[d] [Huggett] to go through needless adversarial hoops to achieve [her] rights under the policy" by "lowball[ing] claims or delay[ing] claims hoping that [Huggett] would settle for less." *Id.* Therefore, we vacate the district court's bad faith ruling and remand for a re-determination of the issue. On remand, the district court may take additional evidence on the relevant factual issues.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Before PREGERSON, THOMAS, and GOULD, Circuit Judges.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.