29 P.3d 870

**Roy E. HORTON and Leslie Horton, husband and wife, Plaintiffs, Counterdefendants–Appellants,**

**v.**

**Charles E. MITCHELL, a single man; the successors in interest to Charles E. Mitchell in and to the real property known as Lot 2, Ann–Lynn Estate, MCR 187/2, Maricopa County, Defendants, Counterclaimants–Appellees.**

**No. 1 CA–CV 00–0500.**

Court of Appeals of Arizona, Division 1, Department C.

July 31, 2001.

Kessler Law Offices by Eric W. Kessler, Mesa, Attorneys for Plaintiffs, Counterdefendants–Appellants.

**1.** The original judgment was amended in August 1998 to correct a typographical error in the legal description of the Hortons' property.

Law Offices of Charles E. Maxwell, P.C. by Charles E. Maxwell, Mesa, Attorneys for Defendants, Counterclaimants–Appellees.

## OPINION

GARBARINO, Presiding Judge.

¶ 1 Roy E. Horton and Leslie Horton appeal from the trial court's denial of their requested injunctive relief and the trial court's award of attorneys' fees in favor of Charles E. Mitchell. For the reasons that follow, we reverse and remand.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 The facts in this matter are largely undisputed. In June 1998, the Hortons acquired Lot 1 in Ann Lynn Estates, a deed restricted, nine-lot subdivision in Mesa, pursuant to a tax lien foreclosure action and resulting judgment quieting title in the Hortons' favor.[1] A treasurer's deed after suit was issued to the Hortons, and they recorded the deed on September 29, 1998. Lot 1 lies in the southwest corner of the subdivision, bounded to the west by Val Vista Drive, bounded to the south by McLellan Road, and bounded to the north by Indigo Circle, a residential street within the subdivision. Lot 1 is bounded to the east by Lot 2. *See* Appendix 1, attached hereto. At the time the Hortons purchased Lot 1, both Lots 1 and 2 were unimproved. The Hortons thereafter constructed their home on Lot 1.

¶ 3 Mitchell owned two lots within Ann Lynn Estates, one of which was Lot 2.[2] Shortly after acquiring Lot 1, the Hortons were approached by Mitchell, who advised them that all of the other owners in Ann Lynn Estates planned to close Indigo Circle at Val Vista Drive, the only ingress and egress for Ann Lynn Estates. Mitchell also stated that the community intended to construct a private roadway across Lot 2 that would connect to McLellan Road, and turn Ann Lynn Estates into a gated community. The Hortons objected to the plan, mainly

**2.** Apparently, Mitchell later quitclaimed title to Lot 2 to other property owners in Ann–Lynn Estates.

because they "were going to lose the road in front of [their] home and beautiful entrance into Ann Lynn," they would be "backed into a corner," and their home would be "surrounded by asphalt."

¶ 4 Ultimately, the other property owners in the subdivision abandoned the private road plan and decided to make the roadway a public thoroughfare. Over the Hortons' objections, the property owners approached the City of Mesa seeking the formation of a Special Improvement District, which would assist Ann Lynn Estates in completing the public roadway project. The Mesa City Council approved the Special Improvement District.

¶ 5 The Hortons then filed suit against Mitchell and his successors-in-interest seeking a permanent injunction preventing the construction of the roadway and the dedication of Lot 2 to the City of Mesa for purposes of constructing the roadway. The Hortons based their complaint on Ann Lynn Estates' recorded Declaration of Restrictions (Restrictions) that forbids the construction of any structure on the lots except for one single-family dwelling. Mitchell filed a counterclaim seeking to enjoin the Hortons from completing the construction begun on their home for having failed to obtain the written approval of Ann Lynn Estates' architectural committee in compliance with the Restrictions. The Hortons prevailed on Mitchell's counterclaim and were awarded their costs and attorneys' fees.[3] After a bench trial, the trial court summarily denied the Hortons' request for injunctive relief, dismissed their complaint, and granted Mitchell $2958.30 in costs and $18,393.95 in attorneys' fees. The Hortons timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B) and (F)(2) (1994).

## ISSUES

¶ 6 The Hortons raise the following issues on appeal:

1. Whether the trial court erred by denying the Hortons an injunction preventing the construction of the roadway across Lot 2; and

2. Whether the trial court erred by determining that Mitchell was the "successful" party in the underlying proceedings and thereby awarding him a portion of his costs and attorneys' fees pursuant to A.R.S. sections 12–341 (1992) and 12–341.01 (Supp.2000).

¶ 7 Because we reverse the trial court's dismissal of the Hortons' complaint and remand with directions to enter judgment in favor of the Hortons for the requested injunctive relief, we need only tangentially address the second issue regarding attorneys' fees.

## DISCUSSION

I. *The Existence of a Contract Between the Parties*

¶ 8 The Restrictions are "a contract between the subdivision's property owners as a whole and the individual lot owners." *Ariz. Biltmore Estates Ass'n v. Tezak,* 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (1993). Mitchell argues on appeal that the Hortons were not record title owners, and, therefore, were not entitled to enforce the Restrictions until September 1998 because they had no interest in Lot 1 until such time as their deed was recorded. Mitchell contends that this is fatal to the Hortons' appeal because the Restrictions were not contractual obligations between the parties when the Hortons learned of Ann Lynn Estates' plan to construct the roadway across Lot 2–that is, the Hortons took all right, title, and interest in Lot 1 with notice of the intent to build the roadway-and, therefore, they should be denied equitable relief because, at the very least, the Hortons "came to the nuisance."

¶ 9 Mitchell raised this argument below. The trial court determined that the Hortons were the "owners" of Lot 1 pursuant to the judgment quieting title in the Hortons' favor. Mitchell has not cross-appealed the trial court's determination that the Hortons were "owners" entitled to enforce the Restrictions upon the entry of judgment quieting title in their favor. Mitchell has failed to preserve this issue for appeal and we lack

---

**3.** Issues relating to Mitchell's counterclaim have not been raised on appeal.

the jurisdiction to entertain it. *Davis v. Cessna Aircraft Corp.*, 182 Ariz. 26, 37, 893 P.2d 26, 37 (App.1994) (recognizing that this Court lacks jurisdiction to review an issue that lessens an appellant's rights on appeal—here, the Hortons' right to enforce the Restrictions—unless a cross-appeal has been taken pursuant to Arizona Rules of Civil Appellate Procedure 9(a)). Even if a cross-appeal had been filed, however, Mitchell's argument lacks merit.

¶ 10 First, the record demonstrates that the Hortons filed their complaint for injunctive relief after they had recorded their treasurer's deed. When the complaint was filed, under either party's interpretation of the Hortons' status as owners, the Hortons were entitled to enforce the Restrictions. Simply put, the Hortons' purported taking of Lot 1 with notice of the proposed roadway is a red herring and of no consequence. The Restrictions were never amended to allow for the roadway *prior* to the time the Hortons recorded their deed. Indeed, the record does not reflect that the Restrictions have been amended since the Hortons recorded their deed. Even under Mitchell's theory regarding the Hortons' status as "owners," the Hortons were still entitled to enforce the Restrictions because they took title to Lot 1 with actual and constructive knowledge of the provisions in the Restrictions, notwithstanding any notice of the intent to derogate from those provisions by the other owners in Ann Lynn Estates.

¶ 11 Additionally, the trial exhibits indicate that Mitchell and all the other owners within Ann Lynn Estates considered the Hortons to be the owners of Lot 1 when, prior to the Hortons recording their deed, the other owners sought to impose the Restrictions' requirements that the Hortons obtain written approval for the design plans of their home. According to Mitchell's argument, the Hortons were not the record owners at that time and they were not parties to the contractual obligations contained in the Restrictions and, therefore, the other owners had no right to demand that the Hortons comply with the Restrictions. Nonetheless, clearly the Hortons, Mitchell, and the other homeowners considered themselves bound by the Restrictions *before* the Hortons recorded their deed.

## II. *Injunctive Relief*

¶ 12 The grant or denial of injunctive relief "is within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of that discretion." *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 366, ¶ 9, 982 P.2d 1277, 1280 (1999). The Hortons claim that the trial court abused its discretion because the Restrictions clearly preclude the construction of a roadway over Lot 2. The provisions of the Restrictions on which the Hortons rely state that

1. All of said Lots in said ANN LYNN ESTATES shall be known and described as single-family residential lots. R–1–35.

 . . . .

4. *No structure shall be erected, altered, placed or permitted to remain on any of said lots other than one detached single* [-] *family dwelling* not to exceed two (2) stories in height, or tri-level single[-]family dwelling and a private garage not to exceed one (1) story in height for not more than three (3) cars.

(Emphasis added.)

¶ 13 Neither party to this action requested that the trial court make findings of fact or conclusions of law. When there is no request for findings and the trial court does not make specific findings of fact, "we 'must assume that the trial court found every fact necessary to support its [ruling] and must affirm if any reasonable construction of the evidence justifies the decision.'" *In re Estate of Shumway*, 197 Ariz. 57, 61, ¶ 9, 3 P.3d 977, 981 (App.1999) (alteration in original) (quoting *Stevenson v. Stevenson*, 132 Ariz. 44, 46, 643 P.2d 1014, 1016 (1982)), *vacated in part on other grounds*, 198 Ariz. 323, 9 P.3d 1062 (2000). The foregoing proposition presumes, however, that the trial court did not otherwise abuse its discretion by misapplying the law. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455–56, 652 P.2d 507, 528–29 (1982)

(recognizing that the trial court abuses its discretion when it commits an error of law in reaching a discretionary decision).

¶ 14 Bearing in mind that the Restrictions are a contract between the property owners as a whole and each individual property owner and that the interpretation of the Restrictions presents a question of law, we review the trial court's interpretation of the Restrictions de novo. *Tezak,* 177 Ariz. at 448, 868 P.2d at 1031. The Hortons took possession of Lot 1 with both actual and constructive knowledge of the Restrictions, and are therefore entitled to enforce the contractual obligations contained therein. *See O'Malley v. Cent. Methodist Church,* 67 Ariz. 245, 250–51, 194 P.2d 444, 448 (1948) (recognizing that common-plan restrictive covenants are "enforceable by any grantee as against any other, upon the theory that there is a mutuality of covenant and consideration, which binds each and gives to each the appropriate remedy" (quoting *Korn v. Campbell,* 192 N.Y. 490, 85 N.E. 687, 689 (1908))).

¶ 15 By dismissing the Hortons' complaint and refusing to grant them an injunction, the trial court necessarily, albeit implicitly, concluded that, despite the language contained in the Restrictions, Ann Lynn Estates could construct a roadway over Lot 2. We disagree with the trial court's implicit conclusion that the Restrictions permit the construction of a road over Lot 2. By either ignoring the Restrictions or interpreting them to allow for the construction of the road over Lot 2, the trial court abused its discretion. *See Grant,* 133 Ariz. at 455–56, 652 P.2d at 528–29.

¶ 16 The Restrictions are clear and unambiguous. They state that all of the lots in Ann Lynn Estates are single-family residential lots and that no "structure" except for a single-family home shall be erected on or be permitted to remain on any of the lots. The relevant inquiry is whether the proposed roadway is the equivalent of a "structure." We conclude that the roadway is a structure within the ordinary meaning of the word and within the meaning of the Restrictions.

¶ 17 "The controlling rule of contract interpretation requires that the ordinary meaning of language be given to words where circumstances do not show a different meaning is applicable." *Chandler Med. Bldg. Partners v. Chandler Dental Group,* 175 Ariz. 273, 277, 855 P.2d 787, 791 (App. 1993). Our review of the Restrictions does not evidence an intent to limit the term "structure" to anything other than its ordinary meaning. For example, paragraph 2 of the Restrictions states that "[a]ll *structures* of said Lots shall be of new construction and no *building* shall be moved from any other location onto any of said lots." (Emphasis added.) Therefore, buildings are not the only structures that are anticipated on the lots. For example, driveways, fences, and gates are also contemplated. The Restrictions proceed to specifically provide for other structures such as attached garages, dwelling houses, open porches, pergolas, storage rooms, and basements. Moreover, paragraph 8 of the Restrictions indicates that "structure" was meant to be given its ordinary meaning by stating that "[n]o *structure of any kind or nature* shall be erected on the easements for public utilities shown on the said plat of ANN–LYNN ESTATES." (Emphasis added.) Finally, paragraph 13 of the Restrictions states that "[n]o structure shall be commenced or erected on any of said lots" unless approved, either affirmatively or by default, by the architectural committee, "[p]rovided ... that the design, location and the kind of materials and the building to be built on said lot shall be governed by all of the restrictions herein set forth and said building shall be in harmony with existing buildings and structures."

¶ 18 The dictionary defines a "structure" as "[s]omething constructed." The American Heritage Dictionary of the English Language 1782 (3d ed.1992). Clearly, a roadway is a structure—that is, "something constructed"—within the ordinary meaning of the term and within the meaning of the Restrictions. We find support for this interpretation of the word "structure" in other contexts as well.

We believe ... that the court of appeals correctly concluded that the term "structure" includes the road construction involved in the off-site improvements. The legislature used the term "building" as well as the term "structure" in the competitive bidding laws. Obviously, therefore, a structure must mean something different than merely a "building."

*Achen–Gardner, Inc. v. Superior Court,* 173 Ariz. 48, 51, 839 P.2d 1093, 1096 (1992); *Village of Niles Ctr. v. Indus. Comm'n,* 371 Ill. 622, 21 N.E.2d 745, 747 (1939) (holding that an improved public street is a "structure" within the meaning of Illinois' workers' compensation law).

¶ 19 We find that the trial court erred by concluding that the Restrictions at issue did not preclude the construction of the proposed roadway. As demonstrated above, a roadway is a "structure" within its ordinary meaning and within the meaning of the Restrictions, and the Restrictions specifically preclude the construction or retention of any structure other than a single-family home. It was an abuse of discretion to ignore the language contained in the Restrictions, or to interpret the term "structure" to exclude the proposed roadway. Holding otherwise would render meaningless "[t]he sanctity of written contracts, [which] defin[e] the rights and duties of the contracting parties," *Apolito v. Johnson,* 3 Ariz.App. 358, 360, 414 P.2d 442, 444 (1966), and would violate the clear intent of the Restrictions as a contract among the property owners.

¶ 20 Other jurisdictions have reached similar conclusions. *See, e.g., Highland Meadow Estates at Castle Peak Ranch, Inc. v. Buick,* 994 P.2d 459, 462–64 (Colo.Ct.App.1999) (holding that a covenant stating that "All lots shall be used exclusively for single-family dwellings" was both a structural and a use restriction that prohibited the building of roads not used in connection with a residence), *aff'd in part, rev'd in part,* 21 P.3d 860 (Colo.2001);[4] *Chase v. Joslin Mgmt. Corp.,* 128 N.H. 336, 512 A.2d 434, 436 (1986)

(affirming the trial court's ruling that an access road violated a restrictive covenant that only permitted the construction of single-family homes); *L. W., Inc. v. Trice,* 416 So.2d 736, 738 (Ala.1982) ("[A] roadway is a structure and ... a lot limited for residential use is limited to residential use within the subdivision of which it is a part."); *Beyt v. Woodvale Place Apartments,* 297 So.2d 448, 450 (La.Ct.App.1974) (holding that a roadway is a structure and its construction would violate the restrictive covenant limiting the land to residential purposes); *Duklauer v. Weiss,* 18 Misc.2d 747, 182 N.Y.S.2d 193, 197–98 (N.Y.Sup.Ct.1959) (interpreting restrictive covenants to manifest an intent to preserve the residential character of the properties, which included the prohibition of constructing roads, especially roads not benefitting the property owners); *see also Rush v. Miller,* 21 Wash.App. 156, 584 P.2d 960, 963 (1978) (holding that a roadway benefitting land outside the subdivision was not a "residential purpose" and was, therefore, a violation of the restrictive covenant); *Hanley v. Misischi,* 111 R.I. 233, 302 A.2d 79, 82 (1973) (same); *Thompson v. Squibb,* 183 So.2d 30, 33 (Fla.Ct.App.1966) (same).

## III. *Attorneys' Fees*

¶ 21 Because the trial court abused its discretion by denying the Hortons' request for injunctive relief, the trial court also abused its discretion by awarding Mitchell his attorneys' fees. *Radkowsky v. Provident Life & Accident Ins. Co.,* 196 Ariz. 110, 113, ¶ 18, 993 P.2d 1074, 1077 (App.1999) ("We review [the trial court's] decision [to award attorneys' fees pursuant to A.R.S. section 12–341.01] according to the standard of whether the trial court abused its discretion. We will not substitute our judgment for that of the trial court if there is any reasonable basis to uphold its decision." (citation omitted)). There is no basis to uphold the trial court's award of attorneys' fees in Mitchell's favor and, therefore, we reverse.

4. The Colorado Supreme Court affirmed that part of the Colorado Court of Appeals' opinion interpreting the restrictive covenant at issue as

precluding the construction of a roadway, and reversed and remanded only on the collateral issue of attorneys' fees. '21 P.3d at 866.

¶ 22 Finally, Mitchell seeks an award of his attorneys' fees on appeal. That request is denied.

## CONCLUSION

¶ 23 For the foregoing reasons, we reverse the trial court's judgment, including its dismissal of the Hortons' complaint and the trial court's award of attorneys' fees in Mitchell's favor. We also remand with directions to enter judgment in the Hortons' favor and grant the relief sought by the Hortons in their complaint.

CONCURRING: JON W. THOMPSON, Judge, SUSAN A. EHRLICH, Judge.

## APPENDIX 1

## Assessment Estimate Map
## For
## Ann-Lynn Estates

Estimated Assessment: $7,375.00 per unit/lot

Prepared by
City of Mesa
Public Works Administration
December 8, 1998
Prices Expire: April 30, 1999