NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In Re the Matter of:

SUNDRA NICKERSON, *Petitioner/Appellee*,

*v.*

WILLIAM NICKERSON, JR., *Respondent/Appellant*.

No. 1 CA-CV 24-0316 FC

FILED 01-28-2025

Appeal from the Superior Court in Maricopa County
No. FN2016-002150
The Honorable Amy Michelle Kalman, Judge

**AFFIRMED**

COUNSEL

Mark Cord, Attorney at Law, Scottsdale
By Mark Cord
*Counsel for Respondent/Appellant*

The Cavanagh Law Firm, P.A., Phoenix
By Tonya K. MacBeth
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

¶1　　　　William Nickerson, Jr. ("Husband") appeals the superior court's award of $160,000 to Sundra Nickerson ("Wife") as an equitable offset for the increased value of post-divorce repairs and improvements made to the marital home that were paid with her separate funds. Husband also appeals the court's refusal to award him one-half of the home's rental value. For reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2　　　　Husband and Wife divorced in 2017 after more than 25 years of marriage. Two years earlier, Husband moved out of the marital home to attend in-patient substance abuse treatment. Wife remained living in the home alone.

¶3　　　　As part of the divorce decree, the court ordered the parties to list the marital home for sale and to split any proceeds equally. The parties engaged a realtor to assist them, until Husband unilaterally fired the realtor. Wife testified that Husband then refused to sell his one-half interest in the home to her, and at the same time refused to buy her one-half interest for himself. In any event, the two had little to no contact with each other over the next few years at Husband's request so that he could work on his sobriety. Sometime during those years, Husband also suffered a stroke that impacted, to some degree, portions of his memory.

¶4　　　　In 2019, Wife paid off the remaining $58,000 mortgage on the home with her separate funds. She then began paying for repairs and improvements to the home with her separate funds over the next three years.

¶5　　　　In 2022, Husband petitioned the court to hold Wife in contempt for, among other things, "[r]efus[ing] to sell [the marital home] and provide the net proceeds" to him. Husband also asked the court to award him one-half of the home's fair market rental value from 2021 until

2

the home sold at some future date, claiming that Wife had "ousted" him from the home.

¶6        The parties jointly hired an appraiser to determine (1) the home's market value in 2017 at the time of divorce, (2) the home's current market value, and (3) the home's would-be market value without Wife's repairs and improvements. The appraiser concluded, and the parties stipulated, that (1) the current fair market value of the home was $450,000 and (2) without Wife's repairs and improvements to the home it would have a current fair market value of $290,000.

¶7        At an evidentiary hearing that followed, the parties further stipulated that Wife was entitled to the value of the repairs and improvements she made to the home, as opposed to a dollar-for-dollar reimbursement for the work done. The appraiser testified about his calculations but gave conflicting testimony. At times he opined that the $160,000 difference between the current market value of $450,000, and the would-be market value of $290,000, was attributable entirely to the repairs and improvements Wife had undertaken. At other times, the appraiser opined that an unquantifiable portion of the $160,000 was attributable to something else.

¶8        Regarding his claim that Wife ousted him from the home, Husband testified that she "wouldn't allow [him] to come back to the house" and that in 2017 she threatened to "call the cops if [he] came nearby." For her part, Wife denied ever telling Husband he could not come back home but did admit to requesting a police standby in 2017 so Husband could remove his firearms "[b]ecause the court recommended it." Wife also testified that Husband never asked to return home after leaving for substance abuse treatment in 2015.

¶9        After taking the matter under advisement, the court concluded that Wife did not oust Husband from the home and, as such, Husband was not entitled to any rental value payment offsets. In reaching that conclusion, the court noted "several memory issues arose during [Husband's] testimony." The court also found Wife's testimony to be credible and that "Husband did not produce any evidence that he asked to return to the marital home." Despite the appraiser's inconsistent testimony, the court attributed $160,000 as the increased value to the home from Wife's repairs and improvements. The court awarded Wife an equalization payment in that amount.

¶10         Husband moved to amend the court's order, which the court denied. This timely appeal followed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

**DISCUSSION**

¶11         Absent an abuse of discretion, we will not disturb a superior court's division of property. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15 (App. 2000).

## I.    Value of Wife's Repairs and Improvements to the Home

¶12         Husband first argues the superior court "misremembered the parties' trial stipulation" concerning Wife's work done on the home. He contends the trial stipulation excluded Wife's "costs of repairs and improvements . . . from the trial court's calculation of [the home's] appreciation value." But the record shows otherwise.

¶13         The following exchange took place at the evidentiary hearing:

[WIFE'S COUNSEL]: We are taking the position that Wife, as co-tenant, is entitled to the value of her improvements and repairs, as opposed to a dollar-for-dollar reimbursement. If you are of the mind that value is the better measure, then we don't need to go through all of her $109,000 in repairs.

. . .

THE COURT: [Husband's counsel], do you agree?

[HUSBAND'S COUNSEL]: I do. I just want to make sure we're clear on that. We're talking about value and appreciation, not the actual expenses. Is that what I hear?

THE COURT: I think that's what she just said.

[HUSBAND'S COUNSEL]: Okay. That's what I want to make sure.

THE COURT: Yes.

[HUSBAND'S COUNSEL]: Then, the answer's yes.

THE COURT: Okay. The Court accepts the parties' stipulations that the Court will be evaluating the value of [Wife]'s improvements to the home, not a dollar-for-dollar compensation for expenditures.

**¶14** Husband maintains the superior court misstated this stipulation in its orders. But both orders—the first, issued under advisement following the evidentiary hearing, and the second, issued denying Husband's motion to amend—correctly set forth the stipulation:

(1) Wife proposes—and Husband appears to agree—that rather than price each individual repair for reimbursement, the more appropriate course of action is to assess the compensation for repairs in terms of the increased value to the home.

(2) [The parties] stipulated to the following: "The repairs and improvements shall be valued based on the value added to the sale price of the home, and not the actual price of repairs and improvements."

**¶15** Trial stipulations are binding on the parties unless the parties show good cause and "are relieved by the court of its binding effect." *Higgins v. Guerin*, 74 Ariz. 187, 190 (1952). Husband has shown no good cause why he should be relieved from his trial stipulation.

**¶16** Husband next argues that *Saba v. Khoury*, 253 Ariz. 587 (2022), provides "guidance for appreciation calculation in this case and others like it." But *Saba* addresses the scenario when community contributions are used to improve separate property, not the use of separate funds to the improvement of community property held as joint tenants like we have here. *Id.* at 590–93, ¶¶ 8–20.

**¶17** Generally, a tenant using separate funds to improve community property has a right to reimbursement from a co-tenant for expenditures to maintain or improve the property even if the paying spouse continues to occupy the marital residence. *Ferrill v. Ferrill*, 253 Ariz. 393, 396–97, ¶¶ 11–13, (App. 2022). Since Husband and Wife jointly own the marital home as co-tenants and Wife made post-decree repairs and improvements with her separate property funds, Wife is entitled to reimbursement for the expenditure of her separate funds used to repair and improve the marital home.

¶18            That leads us to consider whether the superior court abused its discretion in finding that the value Wife added to the home from her repairs and improvements totaled $160,000.

¶19            The court valued Wife's improvements to the home as the difference between the parties' stipulated current market value ($450,000) and the parties' stipulated current market value without repairs ($290,000). The parties reached those stipulations based upon the appraiser's calculations. And though the appraiser's trial testimony at times contradicted itself, the superior court appropriately made credibility determinations in weighing conflicting evidence:

> The Court remains confused by what initially appeared to be a clear set of numbers from [the appraiser] that then became indistinct testimony where he denied his numbers reflected the value of the repairs, but offered no other analysis and no numbers the court should instead use. The Court believes [the appraiser's] numbers, as he originally labeled them, and as they were stipulated by the parties, properly reflect the value of Wife's repairs.

This court will not reweigh the evidence on appeal nor make credibility determinations. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009). Record evidence supports the court's $160,000 valuation.

¶20            And though Husband argues, for the first time on appeal, that Wife's dollar-for-dollar cost of work done on the home is not reasonable, his argument has no relevance because the parties stipulated to reimburse Wife for the value her repairs added to the home. Even if Husband's argument had relevance, arguments raised for the first time on appeal are generally waived. *Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007). On this record, Husband has shown no error.

## II.      Husband's Claim of Ouster from the Home

¶21            Finally, Husband contends the superior court improperly weighed the evidence in concluding he was not ousted (or excluded) from the marital home. Though Husband argues a distinction exists between ouster and exclusion, the two terms are synonymous here and we use them interchangeably. *See Ferrill*, 253 Ariz. at 397–98, ¶¶ 14–19.

¶22            Ouster (or exclusion) occurs when "one spouse has denied the other's right to occupy the marital home." *Id.* at 397, ¶ 16. If a spouse can prove he was ousted, he is entitled to "one-half of the fair market rental

value of the home." *Id.* at 396, ¶ 11. This court accepts the superior court's "findings of fact unless they are clearly erroneous," considering only whether evidence reasonably supports them. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). Without a request for findings of fact under Arizona Rule of Family Law Procedure 82, we also presume the court found every fact necessary to support its ruling. *Horton v. Mitchell*, 200 Ariz. 523, 526, ¶ 13 (App. 2001).

**¶23** Record evidence supports the court's conclusion that Husband was not ousted from the marital home and, thus, not entitled to one-half of the home's rental value. Husband left the marital home voluntarily in 2015 to seek substance abuse treatment. Wife testified that Husband asked her not to contact him so he "could focus on his sobriety." She obliged. Wife also testified she told Husband he was welcome to return, so long as he was sober, and that Husband never requested to return to the home, even disappearing for a few years. And though Wife requested a police presence in 2017 when Husband asked to retrieve his firearms, his request was to retrieve personal items not to return to occupy the home. On this record, Husband has shown no error.

## CONCLUSION

**¶24** We affirm the superior court's orders. Each party has requested attorneys' fees and costs under A.R.S. § 25-324. After considering the reasonableness of positions taken and each party's financial resources, we decline to award either party attorneys' fees. As the prevailing party on appeal, we award Wife her costs upon compliance with ARCAP 21.

