IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

SIERRA CLUB, A CALIFORNIA NON-PROFIT CORPORATION,
*Plaintiff/Appellant/Cross-Appellee,*

*v.*

SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT,
A POLITICAL SUBDIVISION OF THE STATE OF ARIZONA,
*Defendant/Appellee/Cross-Appellant.*

No. 2 CA-CV 2023-0184
Filed January 3, 2025

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2022006914
The Honorable Joan M. Sinclair, Judge

**AFFIRMED IN PART; VACATED IN PART AND REMANDED**

———————————————

COUNSEL

Arizona Center for Law in the Public Interest, Phoenix
By Daniel J. Adelman, Chanele N. Reyes, and Nicholas Ansel
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Spencer Fane LLP, Phoenix
By Eric D. Gere

and

Jones, Skelton & Hochuli P.L.C., Phoenix
By Eileen Dennis GilBride
*Counsel for Defendant/Appellee/Cross-Appellant*

---

## OPINION

Presiding Judge Gard authored the opinion of the Court, in which Chief Judge Staring and Judge Eckerstrom concurred.

---

G A R D, Presiding Judge:

¶1        In this appeal, we address whether certain documents held by the Salt River Project Agricultural Improvement and Power District ("SRP") are subject to disclosure under the Arizona Public Records Law, *see* A.R.S. §§ 39-101 to 39-171, or may instead be withheld under A.R.S. § 30-805(B), which, in certain circumstances, shields a public power entity's records from public inspection. Sierra Club filed a statutory special action after SRP denied, in part, its public records requests. The superior court dismissed that action, concluding that, although SRP is a public body subject to the Public Records Law, the specific documents it had withheld were confidential under § 30-805(B). Sierra Club appeals from the resulting judgment, and SRP cross-appeals, challenging the court's determination that it is a public body under the Public Records Law. For the reasons that follow, we affirm the court's decision in part, vacate it in part, and remand for additional consideration.

### Factual and Procedural Background

¶2        "We view the facts in the light most favorable to upholding the [superior] court's ruling." *Democratic Party of Pima Cnty. v. Ford*, 228 Ariz. 545, ¶ 2 (App. 2012) (quoting *Hammoudeh v. Jada*, 222 Ariz. 570, ¶ 2 (App. 2009)). SRP is an agricultural improvement district organized under Arizona law. *See* Ariz. Const. art. XIII, § 7; A.R.S. §§ 48-2301 to 48-2475. Although it is a special taxing district, *see* § 48-2302, SRP has not collected taxes in decades. Sierra Club is an environmental organization that advocates for various causes, including a reduction in fossil-fuels usage.

¶3        In early 2021, SRP began developing an Integrated System Plan (ISP), which would include both short and long-term resource-allocation strategies to satisfy its customers' electricity requirements. Sierra Club participated in the ISP process. Later that year, SRP announced plans to expand its Coolidge Generating Station, which operates on fossil fuels. Sierra Club opposed the expansion.

¶4        In September 2021, Sierra Club submitted a public records request to SRP, seeking assorted records relating to the ISP.  SRP responded in early October, asserting that it was not subject to the Public Records Law and that some of the documents Sierra Club had requested contained information that was confidential under former A.R.S. § 30-808, the predecessor to § 30-805(B).[1]  Nonetheless, SRP voluntarily disclosed certain responsive documents.

¶5        Later that month, Sierra Club submitted another request, this time asking SRP to produce permits and records relating to the Coolidge Generating Station.  Again, SRP responded that it was not subject to the Public Records Law and asserted that some of the requested records were confidential under former § 30-808.  But SRP voluntarily produced a significant number of documents—amounting to 3,551 pages—in response to the request.

¶6        Sierra Club became aware that SRP had commissioned a study by an external consultant, E3 Consulting, to assess alternatives to expanding the Coolidge Generating Station.  Because SRP had not included a report from E3 in its productions, Sierra Club made a supplemental

---

[1]Effective September 24, 2022, the legislature repealed former § 30-808 and replaced it with § 30-805, retaining most of § 30-808's language but making some modifications.  *See* 2022 Ariz. Sess. Laws, ch. 191, §§ 7-8.  Of note here, the legislature removed language providing for the confidentiality of information that "could give a material advantage to *competitors*," § 30-808 (2021) (emphasis added), and replaced it with language providing for the confidentiality of information that could "give a material advantage to another *entity*," § 30-805(B) (emphasis added).  *See id.*  The legislature also removed an express provision allowing a public power entity's decision not to release records to be challenged in a special action proceeding under § 39-121.02.  *See id.*  Although Sierra Club initiated the present special action before § 30-805's effective date, the superior court applied that statute and the parties appear to agree on appeal that the changes are not material to the analysis, other than to the extent § 30-805(B)'s legislative history informs our interpretation of that provision.  We therefore apply § 30-805 in this decision.  *See Friedman v. Cave Creek Unified Sch. Dist. No. 93*, 231 Ariz. 567, n.1 (App. 2013) ("We cite to the current version of the applicable statutes because no revisions material to this decision have occurred.").

request for the study. SRP took the request under consideration, in the meantime producing summary information on the topic that it had previously given to a member of the Arizona Corporation Commission (ACC).

¶7        Sierra Club thereafter intervened in a proceeding before the ACC's Power Plant and Line Siting Committee, held to determine whether the ACC should issue SRP a Certificate of Environmental Compatibility (CEC) for the Coolidge expansion.[2]  As part of this proceeding, SRP disclosed to Sierra Club a copy of a slide deck containing E3's findings; it did so, however, only under a protective agreement limiting Sierra Club's use of the majority of the slides to the CEC proceeding. SRP also disclosed to Sierra Club more than 2,000 pages of documents. Sierra Club subsequently requested that SRP re-disclose the slide deck as a public record, but SRP did not respond to that request.

¶8        In June 2022, Sierra Club filed the present statutory special action complaint under the Public Records Law and applied for an order to show cause, seeking to compel production of the documents SRP had withheld relating to the ISP and the Coolidge expansion. Sierra Club observed that Article XIII, § 7 of the Arizona Constitution establishes that agricultural and power districts like SRP are "political subdivisions of the state." It noted that § 39-121.01(A)(2) defines "public bod[ies]" subject to public records requirements to include "political subdivisions" like SRP. Sierra Club additionally argued that the documents it had sought were not confidential under former § 30-808 and that they were of the same nature as those commonly released by utilities subject to ACC regulation.

¶9        Before SRP responded to the application for an order to show cause, Sierra Club agreed to narrow the litigation's scope by withdrawing a number of its requests, including the entirety of its September 2021 request relating to the ISP. The E3 slide deck, however, remained in dispute, as did the majority of the documents withheld in October 2021 relating to the Coolidge Generating Station.

---

[2]Although SRP is not a public service corporation subject to ACC regulation under Title 40 of the Arizona Revised Statutes, it is still required to seek a CEC from that commission before constructing a new plant or transmission line. A.R.S. § 40-360.03(A).

¶10          In its response to the application for a show-cause order, SRP first argued that the disputed documents were confidential under former § 30-808 and, as a result, were not public records.[3]  SRP supported its argument with various declarations, including from an SRP director attesting to the special sensitivity of the types of records sought and a legal expert opining that the disputed records met statutory confidentiality requirements under A.R.S. § 40-204, which § 30-805(B) incorporates.

¶11          SRP further asserted that it is not a "public body" as the Public Records Law defines that term because it is not a "tax-supported district" under the law's definitional statute.  *See* § 39-121.01(A)(2).  And it proposed that, even if it were subject to the Public Records Law, concerns of privacy, confidentiality, and the state's best interests would militate against disclosure because the documents contained sensitive information that could detrimentally affect electric service.  SRP argued that these concerns outweighed Sierra Club's desire for production because Sierra Club had already received the majority of the records it requested, albeit under a protective agreement.  Sierra Club then submitted new evidence with its reply, including a declaration from a consultant addressing the confidentiality issue, to which SRP objected under Rules 401, 402, and 702, Ariz. R. Evid.  SRP's objection resulted in stipulated supplemental briefing.

¶12          Following oral argument, the superior court dismissed the complaint and denied the order to show cause.  The court did not rule on SRP's objections to the declaration from Sierra Club's consultant.  Applying Article XIII, § 7 of the Arizona Constitution, § 48-2302, and published caselaw, the court concluded that SRP is a political subdivision.[4]  Because the Public Records Law defines a "public body" to include "any political subdivision," § 39-121.01(A)(2), the court determined that SRP is a "public body" under that law.  And because SRP is a "public body" by virtue of it being a political subdivision, the court concluded that "it is irrelevant

---

[3]SRP also asserted that some of the information Sierra Club sought was confidential under A.R.S. § 41-1803, which shields critical infrastructure information from disclosure.  The superior court found it had insufficient evidence to resolve this confidentiality assertion without reviewing the disputed documents in camera, which it did not do.  Confidentiality based on § 41-1803(G) is not at issue in this appeal.

[4]The superior court also concluded that SRP is a public power entity as defined in A.R.S. § 30-801(2)(a), but this point is not disputed.

whether it is a tax-supported district." The court declined to "carve out an exception from the plain language of the statute" to accommodate SRP.

¶13        The superior court then turned to the confidentiality statute, applying § 30-805(B) instead of former § 30-808 because § 30-805(B) was the law then in effect. It interpreted § 30-805(B) to create a "presumption of confidentiality . . . for public power entities like SRP." It determined that the statute allows for confidentiality so long as disclosure could advantage another entity, "not even necessarily a competitor," and found that SRP operates in a competitive market despite being a monopoly. Without addressing the categories of documents Sierra Club had requested, the court determined that "there is sufficient basis for the requested documents to be deemed confidential and not . . . public record[s]."

¶14        The superior court subsequently entered final judgment in SRP's favor. Sierra Club filed a notice of appeal and SRP filed a notice of cross-appeal, challenging the court's ruling that it is a public body subject to the Public Records Law. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1). *See* Ariz. R. P. Spec. Act. 8(a) (appeal procedures from superior court's denial of special action "shall be as prescribed by the applicable rules").

## Discussion

¶15        Sierra Club argues that the superior court erred by failing to apply the Public Records Law's presumption in favor of disclosure before considering whether the withheld documents were confidential under § 30-805(B). It further argues that the court erroneously construed § 30-805(B) in various ways, including by reading it to presume that a public power entity's records are confidential, a presumption that it then mistakenly applied to the disputed records in blanket fashion. Sierra Club maintains the court should have instead reviewed the records in camera to determine whether they met statutory criteria and that the facts the court did find, which related to whether SRP operates in a competitive market, were clearly erroneous. In its cross-appeal, SRP contends it is not subject to the Public Records Law because it is not a "public body" under § 39-121.01(A)(2).

¶16        We first address the questions related to the Public Records Law, as they are threshold issues. We conclude that SRP is subject to that law but that the superior court did not err by considering whether the documents were confidential under § 30-805(B) before conducting a public

records analysis. We further conclude that the court erred by interpreting § 30-805(B) to provide a blanket presumption of confidentiality for the records of public power entities. Instead, the statute protects only those records meeting its criteria, which is a fact-specific determination. Although § 30-805(B)'s protections are robust and may well apply to the bulk of SRP's withheld documents, the court here did not resolve disputes in the evidence or make findings under the correct standard. We therefore remand for further consideration under the procedures explained below.

## I.   Public Records Law

¶17        The parties dispute whether the Public Records Law applies to SRP and, if so, whether the superior court should have applied its presumption in favor of disclosure here, before determining whether the documents withheld were protected under § 30-805(B). "We review questions of statutory interpretation de novo." *Am. C.L. Union of Ariz. v. Ariz. Dep't of Child Safety*, 251 Ariz. 458, ¶ 11 (2021). Likewise, a "document's status as a public record is a question of law, which we review de novo." *Lake v. City of Phoenix*, 222 Ariz. 547, ¶ 7 (2009).

### A.   "Public body" under § 39-121.01(A)(2)

¶18        SRP maintains that it does not meet the definition of a "public body" under § 39-121.01(A)(2) because it is neither a "tax-supported district" nor a "political subdivision," at least for the Public Records Law's purposes. Sierra Club responds that SRP is a "political subdivision" under settled law, making it a "public body" under § 39-121.01(A)(2)'s plain terms, regardless whether it is also a "tax-supported district."

¶19        We begin with the text when construing statutes. *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, ¶ 8 (2023). "We interpret statutes 'according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise.'" *In re Drummond*, ___ Ariz. ___, ¶ 19, 543 P.3d 1022, 1028 (2024) (quoting *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, ¶ 31 (2023)); *see* A.R.S. § 1-213 ("Words and phrases shall be construed according to the common and approved use of the language."). "[W]e may consider dictionary definitions where a statute does not define a term." *Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, ¶ 20 (2021). But we construe "[t]echnical words and phrases and those which have acquired a peculiar and appropriate meaning in the law . . . according to such peculiar and appropriate meaning." § 1-213.

¶20 And when "construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Drummond*, ___ Ariz. ___, ¶ 5, 543 P.3d at 1025 (quoting *Stambaugh v. Killian*, 242 Ariz. 508, ¶ 7 (2017)). We will not "read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself," nor will we "'inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions.'" *Roberts v. State*, 253 Ariz. 259, ¶ 20 (2022) (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965)). If "a statute's plain language is unambiguous in context, it is dispositive." *Id.*

¶21 "Arizona provides a general right to inspect public records." *Silverman v. Ariz. Dep't of Econ. Sec.*, ___ Ariz. ___, ¶ 10, 549 P.3d 183, 187 (2024). The Public Records Law directs that "[p]ublic records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours." § 39-121. It defines an "officer" as "any person elected or appointed to hold any elective or appointive office of any public body and any chief administrative officer, head, director, superintendent or chairman of any public body." § 39-121.01(A)(1). It requires each "public body" to "be responsible for the preservation, maintenance and care of that body's public records." § 39-121.01(C). And it defines a "public body" as follows:

> "Public body" means this state, any county, city, town, school district, *political subdivision or tax-supported district* in this state, any branch, department, board, bureau, commission, council or committee of the foregoing, and any public organization or agency, supported in whole or in part by monies from this state or any political subdivision of this state, or expending monies provided by this state or any political subdivision of this state.

§ 39-121.01(A)(2) (emphasis added).

¶22 The Public Records Law does not define "political subdivision." *See id.* That term, however, is a technical one that has "acquired a peculiar and appropriate meaning in the law," and we must construe it according to that meaning. § 1-213; *see McClanahan v. Cochise*

8

*Coll.*, 25 Ariz. App. 13, 16 (1975) ("The attributes which are generally regarded as distinctive of a political subdivision are that it exists for the purpose of discharging some function of local government, that it has a prescribed area, and that it possesses authority for subordinate self-government by officers selected by it.").  Article XIII, § 7 of the Arizona Constitution specifically establishes that agricultural improvement districts are political subdivisions of the state:

> Irrigation, power, electrical, *agricultural improvement*, drainage, and flood control *districts*, and tax levying public improvement districts, now or hereafter organized pursuant to law, *shall be political subdivisions of the state*, and vested with all the rights, privileges and benefits, and entitled to the immunities and exemptions granted municipalities and political subdivisions under this constitution or any law of the state or of the United States; but all such districts shall be exempt from the provisions of sections 7 and 8 of article IX of this constitution.

(Emphasis added.)  Section 48-2302, under which SRP was organized as an agricultural district, likewise categorizes such districts as political subdivisions of the state:  "An agricultural improvement district organized under the provisions of this chapter is a public, political, taxing subdivision of the state . . . ."  *See also Clouse ex rel. Clouse v. State*, 199 Ariz. 196, ¶ 76 (2001) (recognizing that SRP "is a political subdivision of the state, organized pursuant to article XIII, section 7 of the Arizona Constitution").

**¶23**        SRP maintains that, while it is a political subdivision of the state in certain circumstances, it is not one for purposes of the Public Records Law.  It reasons that the statute's specific reference to "tax-supported" districts implicitly excludes from the definition of "public body" any districts that are not tax-supported.[5] § 39-121.01(A)(2) (emphasis added).  And because non-tax-supported districts are excluded, SRP

---

[5]Sierra Club suggests that, although SRP currently does not levy taxes, it is authorized to do so as a special taxing district and may exercise that authority in the future.  *See* §§ 48-2302, 48-2414.  Given our resolution, we need not determine whether SRP's currently unexercised taxation authority qualifies it as a "tax-supported district" under § 39-121.01(A)(2).

continues, they cannot qualify as "political subdivisions" within § 39-121.01(A)(2)'s meaning.

¶24 As set forth above, § 39-121.01(A)(2) defines a "public body" as "*any . . .* political subdivision *or* tax-supported district." (Emphasis added.) "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting *Any*, Webster's Third New Int'l Dictionary (1976)); *see also City of Phoenix v. Glenayre Elecs., Inc.*, 242 Ariz. 139, ¶ 17 (2017) ("[T]he word 'any' is 'broadly inclusive.'" (quoting *City of Phoenix v. Tanner*, 63 Ariz. 278, 280 (1945))). And the legislature did not expressly limit "any's" expansive meaning here. *See Gonzales*, 520 U.S. at 5 (construing phrase "any other term of imprisonment" to refer to all terms of imprisonment where Congress did not limit the breadth of the word "any"). We therefore read "any . . . political subdivision" in § 39-121.01(A)(2) to include political subdivisions "of whatever kind," including those that are not tax-supported. *Id.* (quoting *Any*, Webster's Third New Int'l Dictionary (1976)).

¶25 Moreover, in § 39-121.01(A)(2)'s enumeration of entities that qualify as public bodies, the entities "political subdivision" and "tax-supported district" are separated by the word "or." And "[t]he word 'or,' as it is often used, is '[a] disjunctive particle used to express an *alternative* or *to give a choice* of one among two or more things.'" *State v. Pinto*, 179 Ariz. 593, 595 (App. 1994) (emphasis in *Rutledge*) (quoting *Rutledge v. Ariz. Bd. of Regents*, 147 Ariz. 534, 556-57 (App. 1985)); *see Or*, Merriam-Webster, https://merriam-webster.com (last visited Nov. 13, 2024) ("or" is "used as a function word to indicate an alternative"). "We will usually interpret 'or' to mean what it says, and we will give it that meaning unless impossible or absurd consequences will result." *Pinto*, 179 Ariz. at 595. Consistent with the accepted meaning of "or," the statute's reference to "political subdivision[s] *or* tax-supported district[s]" signifies that those two types of entities are alternative ways to satisfy the definition of "public body." § 39-121.01(A)(2). In other words, a public body may be a political subdivision, *or* it may be a tax-supported district, *or* it may be any of the other types of entities included in the same list.

¶26 Finally, contrary to SRP's argument, the existence of other statutory provisions that limit the definition of "political subdivision" for a particular article's purpose are not dispositive. *See* A.R.S. §§ 28-7691(2), 35-511(2), 38-502(5), 38-701, 41-2251(10), 49-581(14). In fact, the legislature's

choice to limit the term's meaning in other, unrelated contexts makes its failure to do so in Title 39 all the more instructive. *See State v. Averyt*, 179 Ariz. 123, 129 (App. 1994) (court will not insert in statute "words of limitation which the legislature has expressly omitted").

**¶27**       We thus discern no basis for concluding that § 39-121.01(A)(2)'s inclusion of "tax-supported district[s]" in its list of "public bod[ies]" silently excludes districts that are "political subdivisions" under the law but do not collect taxes. *See Roberts*, 253 Ariz. 259, ¶ 20 ("Beyond its text, we will construe a statute to include only what is 'necessarily implied' to effectuate the express manifest intention."). SRP is a political subdivision, both by constitutional provision and statute. *See* Ariz. Const. art. XIII, § 7; § 48-2302. Section 39-121.01(A)(2) provides that a "political subdivision" is a "public body" under the Public Records Law. We therefore conclude that, under § 39-121.01(A)(2)'s plain terms, SRP is a "public body."[6]

## B.  Presumption in favor of disclosure

**¶28**       Sierra Club argues that the Public Records Law requires a presumption that disclosure is appropriate, and that the superior court failed to apply that presumption to the records at issue here. Sierra Club instead proposes that the court inverted the presumption and shifted the burden from SRP to Sierra Club by applying § 30-805(B) to presume the records were not subject to disclosure. In response, SRP maintains that the court correctly declined to conduct a public records analysis because § 30-805(B), a more specific statute than the Public Records Law, shielded the documents from disclosure. Distilled to its essence, the question before us is whether the superior court erred by addressing the § 30-805(B) confidentiality question first, without presuming the Public Records Law required SRP to produce the requested documents.

**¶29**       "Arizona law defines 'public records' broadly and creates a presumption requiring the disclosure of public documents." *Griffis v. Pinal County*, 215 Ariz. 1, ¶ 8 (2007). But this "presumption applies only when a document first qualifies as a public record." *Id.* ¶ 12. Accordingly, a

---

[6]Because the statute's plain language is dispositive, we need not employ secondary interpretation methods and therefore do not address the parties' policy-based arguments. *See Drummond*, ___ Ariz. ___, ¶ 5, 543 P.3d at 1025.

threshold question in many public records cases is whether the documents at issue are public records in the first place. *See id.* ¶ 13 ("When the facts of a particular case 'raise a substantial question as to the threshold determination of whether the document is subject to the statute,' the court must first determine whether that document is a public record." (quoting *Salt River Pima-Maricopa Indian Cmty. v. Rogers*, 168 Ariz. 531, 536 (1991))). If they are not, the presumption in favor of disclosure does not arise. *See Lunney v. State*, 244 Ariz. 170, ¶ 29 (App. 2017) ("If a document is a public record, Arizona's presumption in favor of disclosure applies . . . ."); *Jud. Watch, Inc. v. City of Phoenix*, 228 Ariz. 393, ¶ 10 (App. 2011) (court must "initially determine whether the requested document is a 'public record,'" and, if it is, apply presumption favoring disclosure and consider whether other interests overcome that presumption).

**¶30**　　　　As SRP correctly recognizes, we have declined to conduct a public records analysis when a specific statutory provision makes documents confidential. *See AUDIT-USA v. Maricopa County*, 254 Ariz. 536, ¶ 7 (App. 2023) ("Because the County is precluded by statute from disclosing the ballot images requested by AUDIT-USA, we need not resolve whether public-records law applies."); *Phx. Newspapers, Inc. v. Ariz. Dep't of Econ. Sec.*, 186 Ariz. 446, 449 (App. 1996) ("[B]ecause we hold that the records are confidential pursuant to § 41-1959(A), a specific statute, they are not subject to a public records analysis."); *Ariz. Portland Cement Co. v. Ariz. State Tax Ct.*, 185 Ariz. 354, 357 (App. 1995) (information confidential by statute is not public record but rather retains its confidential nature). It follows that, absent a determination that the documents in dispute are public records, the Public Records Law's presumption in favor of disclosure does not arise. *See Griffis*, 215 Ariz. 1, ¶ 12; *Lunney*, 244 Ariz. 170, ¶ 29; *Jud. Watch, Inc.*, 228 Ariz. 393, ¶ 10.

**¶31**　　　　Here, § 30-805(B) makes records meeting its criteria confidential "[n]otwithstanding any other law," including, necessarily, the Public Records Law. *See Glenayre Elecs., Inc.*, 242 Ariz. 139, ¶ 16 (legislature's use of the phrase, "[n]otwithstanding any other statute," in A.R.S. § 12-552(A), "makes clear that the statute . . . controls over other, potentially conflicting state laws"). Accordingly, a superior court need not conduct a public records analysis for any documents meeting § 30-805(B)'s criteria. *See AUDIT-USA*, 254 Ariz. 536, ¶ 7; *Phx. Newspapers, Inc.*, 186 Ariz. at 449. The superior court did not err by considering confidentiality under § 30-805(B) first, without presuming the documents were subject to disclosure under the Public Records Law.

## II. Interpretation of § 30-805(B)

¶32      Sierra Club contends that the superior court misinterpreted § 30-805(B) and its interplay with § 40-204, that the court's factfinding procedure was defective, and that the court made clearly erroneous findings of fact. SRP disagrees, arguing that the court interpreted and applied the statute correctly and that the record supports its decision to dismiss the complaint. As previously discussed, we review de novo issues of statutory interpretation. *See Am. C.L. Union of Ariz.*, 251 Ariz. 458, ¶ 11. But "we defer to the court's factual findings unless clearly erroneous." *McKee v. Peoria Unified Sch. Dist.*, 236 Ariz. 254, ¶ 14 (App. 2014).

¶33      Section 30-805(B) provides:

> Notwithstanding any other law, records and proceedings *relating to competitive activity*, including trade secrets or privileged or confidential commercial or financial information, *if disclosure of the information could give a material advantage to another entity,* are not open to public inspection and may not be made public except by order of the public power entity's governing body. *The information protected as confidential under this section is any information that is similar to the information that would be confidential under § 40-204 if reported by a public service corporation to the Arizona corporation commission*.

(Emphasis added.) And § 40-204 provides, in pertinent part:

> A. Every public service corporation shall furnish to the commission, in the form and detail the commission prescribes, tabulations, computations, annual reports, monthly or periodical reports of earnings and expenses, and all other information required by it to carry into effect the provisions of this title and shall make specific answers to all questions submitted by the commission. If a corporation is unable to answer any question, it shall give a good and sufficient reason therefor.

B.    When required by the commission, a public service corporation shall deliver to the commission copies of any maps, profiles, contracts, franchises, books, papers and records in its possession, or in any way relating to its property or affecting its business, and also a complete inventory of all its property in the form the commission directs.

C.   No information furnished to the commission by a public service corporation, except matters specifically required to be open to public inspection, shall be open to public inspection or made public except on order of the commission entered after notice to the affected public service corporation, or by the commission or a commissioner in the course of a hearing or proceeding.

### A.  Presumption of confidentiality

¶34        The superior court determined that "§ 40-204 creates a presumption of confidentiality for public service corporations and . . . § 30-805(B) does the same for public power entities like SRP."  Sierra Club contends the court read the statutory language too broadly, resulting in "a functional exemption from disclosure for *all* records of public power entities."[7]  We agree.

¶35        Without question, § 40-204(C) creates a general presumption of confidentiality for information provided to the ACC by public service

---

[7]Sierra Club also maintains that the superior court "misread section 30-805(B) to mandate an inapposite regulatory process for public power entities' records to be made public."  To the extent Sierra Club suggests otherwise, we do not read the court's order as applying to § 30-805(B) the procedure in § 40-204(C) for releasing confidential information held by the ACC, which involves an order from the commission or a commissioner during a proceeding or hearing.  In fact, the court recognized that public power entities are not subject to the same requirements as public service corporations and that § 40-204(C)'s procedure for a commissioner order would not apply to a public power entity.

corporations. The statute states unequivocally that "no information" given to the ACC "shall be open to public inspection or made public" unless statutory conditions are met. § 40-204(C). Under § 40-204(C), therefore, confidentiality is the rule and disclosure is the exception. *See Silverman*, ___ Ariz. ___, ¶ 11, 549 P.3d at 187 (concluding that agency's records "are presumptively restricted from release" based on statutory provision that "'[u]nless otherwise provided by law . . . all information'" contained therein "'is confidential and may not be released except as provided'" elsewhere in same section (quoting A.R.S. § 46-460(A))).

¶36        Section 30-805(B), in contrast, is structured differently. It does not contain the same type of language as § 40-204(C) broadly exempting a public power company's records from public inspection. To the contrary, § 30-805(B) establishes particular conditions under which such records are confidential. Specifically, § 30-805(B) shields only those records "relating to competitive activity" and only if their disclosure "could give a material advantage to another entity." Section 30-805(B) thus does not, standing alone, contain a presumption of confidentiality; it instead establishes that some information may qualify as confidential, if it meets defined criteria.

¶37        We disagree with SRP's position that § 30-805(B)'s final sentence incorporates § 40-204(C) in its entirety, sweeps in the latter statute's general presumption of confidentiality, and provides a pathway — independent of § 30-805(B)'s first sentence — to withhold documents. Not only would such an interpretation render superfluous the conditions for confidentiality set forth in § 30-805(B)'s first sentence, *see Nicaise v. Sundaram*, 245 Ariz. 566, ¶ 11 (2019), but it would also require us to read a broad exemption into the statute, *see Roberts*, 253 Ariz. 259, ¶ 20 (courts should not extend a statute to matters not falling within its express provisions).

¶38        Nor does the language actually provided support this view. The last sentence of § 30-805(B) explains that the information the section makes confidential is "similar" to that which would be confidential under § 40-204.[8] Dictionaries define "similar" as "having characteristics in

---

[8]SRP contends Sierra Club waived any argument that § 30-805(B)'s reference to § 40-204 merely illustrates the types of documents that may be withheld as confidential. But the superior court specifically analyzed the "similar to" language in its ruling and concluded that "[w]hat can be withheld . . . does not have to be precisely analogous to what is considered

common: strictly comparable" or "alike in substance or essentials," *Similar*, Merriam-Webster, https://merriam-webster.com (last accessed Nov. 15, 2024), or as "looking or being almost, but not exactly, the same," *Similar*, Cambridge Dictionary, https://dictionary.cambridge.org (last accessed Nov. 15, 2024). The word thus presupposes the existence of two or more things that have observable and comparable characteristics and that are not the same but share qualities. Section 30-805(B)'s use of the word "similar" does not signal an intent to incorporate § 40-204 into that statute but instead invites a court to look to § 40-204 for additional information concerning the types of documents that might qualify as confidential.

¶39    We therefore decline to read § 30-805(B) to incorporate § 40-204 or to shield from disclosure the precise information that § 40-204(C) shields. Rather, § 30-805(B)'s citation to § 40-204 is a guidepost to help courts evaluate the type of records deemed confidential. A court considering a confidentiality claim under § 30-805(B) may therefore consider similarities between the documents at issue and those afforded confidentiality in ACC proceedings under § 40-204(C).[9] But ultimately,

---

confidential for public service corporations." Sierra Club's argument on appeal fairly addresses the court's ruling. And in any event, we must independently read the statutes and give meaning to all of their provisions, including the word "similar." *Drummond*, ___ Ariz. ___, ¶ 5, 543 P.3d at 1025. For these reasons, we decline to find waiver here. *See Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, ¶ 9 (App. 2018) ("[T]he decision to find waiver is discretionary."); *Noriega v. Town of Miami*, 243 Ariz. 320, ¶¶ 27-28 (App. 2017) (declining to apply waiver where issue not raised in motion for summary judgment but superior court ruled on issue).

[9]This is not to suggest that case-specific rulings by the ACC, a particular public service corporation's decision not to withhold information it could have withheld, or other litigation decisions in ACC proceedings are material to the analysis. Consistent with § 40-204(C), a court should focus on the types of information "specifically [made] open to public inspection" by law. *See, e.g.*, A.R.S. § 40-365 (public service corporation must file with the ACC and "print and *keep open to public inspection*, schedules showing all rates, tolls, rentals, charges and classifications to be collected or enforced, together with all rules, regulations, contracts, privileges and facilities which in any manner affect or relate to rates, tolls, rentals, classifications or service" (emphasis added)). This may include consideration of the relevant portions of the Arizona Administrative Code to the extent they specifically

whether a record "relate[s] to competitive activity" under § 30-805(B) is a factual question for the court.

## B. Material advantage to another entity

**¶40** The superior court rejected Sierra Club's argument that, by providing that records are not confidential unless they "could give a material advantage to another entity," § 30-805(B) requires a public power entity to "show some resultant 'competitive disadvantage' or 'competitive injury'" from disclosure. The court concluded that "[t]he statute does not require an advantage to a competitor, but only that the information *could* give a material advantage to another *entity*." It then discussed the legislature's replacement of the word "competitors" with "entity" when repealing § 30-808 and replacing it with § 30-805(B), *see* 2022 Ariz. Sess. Laws, ch. 191, §§ 7-8, remarking that "[t]he change from the word 'competitors' in the prior statute, to 'entity' in the current statute, necessarily broadens the scope of the confidentiality privilege." The court "assume[d] that this is what the legislature intended with this amendment of the statute."

**¶41** Sierra Club challenges this analysis. It argues that the meaning of "another entity" as used in § 30-805(B) is "not immediately apparent from the statutory text," making it ambiguous and authorizing us to consider secondary interpretation methods. Sierra Club then discusses § 30-805(B)'s legislative history at length, proposing that it reveals the legislature did not intend to broaden the confidentiality provision's scope by substituting the word "entity" for "competitor." Although SRP maintains that "entity" is broader than "competitor," it notes that, in this case, the difference is insignificant because the parties' arguments and evidence below focused on SRP's competitors, in accordance with former § 30-808.

**¶42** While the parties rely heavily on § 30-805(B)'s legislative history, that history is relevant only if the statutory text, viewed in context, is ambiguous. *See State v. Ewer*, 254 Ariz. 326, ¶ 20 (2023) ("We do not consider legislative history when the correct legal interpretation can be determined from the plain statutory text and the context of related statutes."). "'A statute is not ambiguous merely because the parties

---

require certain material to be made "open to public inspection" during ACC proceedings. § 40-204(C).

disagree about its meaning,' it is ambiguous if the 'meaning is not evident after examining the statute's text as a whole or considering statutes relating to the same subject or general purpose.'" *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 110, ¶ 17 (2024) (quoting *Glazer v. State*, 244 Ariz. 612, ¶ 12 (2019)). "We do not view statutory words in isolation, but rather draw their meaning from the context in which they are used." *DBT Yuma, L.L.C. v. Yuma Cnty. Airport Auth.*, 238 Ariz. 394, ¶ 10 (2015).

¶43 Section 30-805(B) is not ambiguous. The statute shields a public power entity's records if: 1) they "relat[e] to competitive activity," and 2) their disclosure "could give a material advantage to another entity." The word "entity" commonly means "an organization (such as a business or governmental unit) that has an identity separate from those of its members." *Entity*, Merriam-Webster, https://www.merriam-webster.com (last visited Nov. 17, 2024). This is a broad definition that does not directly require a competitive relationship, but the word's context refines its scope. Section 30-805(B) is only concerned with "another entity" to the extent the disclosure of information could give that "entity" a "material advantage," thereby presupposing some sort of competitive relationship between the "entity" and the party claiming confidentiality. § 30-805(B); *see Advantage*, Merriam-Webster, https://www.merriam-webster.com (last visited Nov. 17, 2024) (defining advantage as "superiority of position or condition"). And the statute only protects records that "relat[e] to competitive activity" in the first place. § 30-805(B).

¶44 Accordingly, while "entity" carries a broad definition, its statutory context makes clear that it includes only entities with which the public power entity is competing in some fashion. And like the competitive-activity requirement, the question whether an entity could receive a material advantage from disclosure is a factual one.

## C. Application

¶45 We disagree with SRP's position that the superior court conducted a case-specific analysis and did not rest its decision on § 30-805(B)'s perceived presumption of confidentiality. The court did not address Sierra Club's specific records requests, nor did it make findings about how each requested category of documents relate to competitive activity. The court found as an "example" that "some of th[e] information" requested, generally related to procurement, could create a material benefit for other entities based on SRP's participation in the Western Energy Imbalance Market (WEIM), which the court found to be competitive. But it

did not explain how the remainder of the requested documents met the statutory prerequisites for confidentiality.

**¶46** Moreover, each party offered declarations addressing the competitive-activity issue and the similarities between the records requested and those traditionally treated as confidential in ACC proceedings; the superior court did not resolve the conflicts in that evidence. *See Pugh v. Cook*, 153 Ariz. 246, 247 (App. 1987) ("An appellate court will not weigh the evidence on a disputed question of fact. . . . Nor do we judge the credibility of the witnesses."). The court referenced certain declarations, but only in concluding that it lacked sufficient information to resolve the § 41-1803(G) confidentiality claim, which is not at issue on appeal.

**¶47** SRP maintains we should affirm based on the existing record because we must assume the superior court implicitly found every fact necessary to sustain its decision. *See Horton v. Mitchell*, 200 Ariz. 523, ¶ 13 (App. 2001) (court of appeals presumes trial court found all facts necessary to support ruling and must affirm if reasonable construction of the evidence justifies decision). That "proposition presumes, however, that the [superior] court did not otherwise abuse its discretion by misapplying the law," *id.*, and we have concluded that the court did so here. Apparently because it believed the statutory scheme presumed confidentiality, the court did not make sufficient findings for us to meaningfully review whether § 30-805(B) shields the documents requested.

**¶48** We therefore vacate the superior court's decision that the requested documents are confidential under § 30-805(B) and remand for it to make appropriate findings under this decision's framework. In light of our resolution, we need not consider whether the superior court clearly erred in its factual findings relating to the WEIM or whether it erred by declining to review the disputed documents in camera. We leave the decision whether to conduct an in-camera review to the court's discretion on remand.

### Attorney Fees and Costs

**¶49** Sierra Club requests its attorney fees and costs on appeal. It cites § 39-121.02(B), which allows the party that substantially prevails in a public records matter to recover fees and costs. It also cites A.R.S. § 12-341.01, which relates to breach-of-contract actions and does not apply here, and A.R.S. § 12-349(A)(1), which allows for sanctions for actions that are not

substantially justified.  Sierra Club also requests its costs on cross-appeal, citing the same provisions.

**¶50**　　　　We do not believe that SRP's cross-appeal, or its defense against Sierra Club's appeal, lacked substantial justification—to the contrary, SRP prevailed in part on Sierra Club's appeal—and we therefore decline to award attorney fees under § 12-349(A)(1).  *See Montano v. Luff*, 250 Ariz. 401, ¶ 18 (App. 2020) (declining to impose attorney fees as sanction on party who "prevailed on one issue in this appeal").  As we have remanded this matter for further consideration, and that consideration may include a public records analysis, we leave the issue of fees under § 39-121.02(B) for the superior court to resolve.  However, because Sierra Club substantially prevailed in this appeal, we award it costs on appeal, upon compliance with Rule 21, Ariz. R. Civ. App. P.

## Disposition

**¶51**　　　　We affirm the superior court's judgment insofar as it concluded that the Public Records Law applies to SRP and analyzed whether the disputed records were confidential under § 30-805(B) before applying the Public Records Law's presumption in favor of disclosure.  We conclude, however, that the court erred by determining that § 30-805(B) creates a blanket presumption of confidentiality and dismissing this matter without conducting a case-specific evaluation whether 1) the records at issue related to competitive activity and 2) their disclosure could give another entity a material advantage.  § 30-805(B).  On remand, the court should consider these questions under the standards laid out above.  If the court concludes that any portion of the records are not covered by § 30-805(B) protections, it should then analyze whether they are subject to disclosure under the Public Records Law.